UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRISTHIAN COZAYATL SAMPEDRO<br>    Plaintiff, | ) <br> ) <br> ) | CIVIL NO. 3:18-CV-00078 (KAD) |
| v. | ) <br> ) | |
| DORA B. SCHRIRO,[1] ALARIC FOX,<br>JEFFREY DUBUC, and BENJAMIN<br>KORES,<br>    Defendants. | ) <br> ) <br> ) <br> ) | MARCH 28, 2019 |

**MEMORANDUM OF DECISION RE:
DEFENDANTS' MOTION TO DISMISS [ECF NO. 12]**

Kari A. Dooley, United States District Judge

This action, brought pursuant to 42 U.S.C. § 1983, arises out of the arrest of Cristhian Sampedro ("Mr. Sampedro") by defendant Trooper Benjamin Kores ("Trooper Kores"), a member of the Connecticut Department of Emergency Services and Public Protection ("DESPP"). Mr. Sampedro alleges that Trooper Kores violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution as well as the Connecticut Constitution during his arrest. Mr. Sampedro also brings a claim against Trooper Kores, Commissioner Dora B. Schriro, Colonel Jeffrey Dubuc, and Sergeant Alaric Fox (collectively, the "Defendants") seeking a declaratory judgment that Trooper Kores' conduct violated his constitutional rights as averred as well as permanent injunctive relief "as to all future conduct, training and policy administration, as relates to the detention of Connecticut residents without legal immigration status." Trooper Kores is sued in both his individual and official capacities, while Schriro, Fox, and Dubuc are sued in their official capacities. Trooper Kores has moved to dismiss this action pursuant to Rule 12 of

---

[1] The Plaintiff's complaint contains a typographical error with respect to defendant Dora B. Schriro's last name. To avoid confusion, the Court will use the correct spelling of defendant Schriro's name.

the Federal Rules of Civil Procedure. He argues that he is entitled to qualified immunity or, alternatively, that Mr. Sampedro has failed to plead a plausible constitutional violation for each of the claims against him. All of the Defendants have moved to dismiss Mr. Sampedro's request for declaratory and injunctive relief for lack of subject matter jurisdiction. For the foregoing reasons, the Defendants' motion to dismiss is GRANTED.

**Factual Allegations and Procedural History**

For purposes of this motion, the Court accepts the allegations in the Complaint as true and they are set forth as follows. On June 9, 2017, Mr. Sampedro was driving on Interstate 91 in Connecticut when he briefly fell asleep at the wheel and struck the trailer of another motorist. (Compl. at ¶¶ 9–14.) Shortly thereafter, Trooper Kores responded to the accident scene. (*Id.* at ¶ 20.) He asked Mr. Sampedro for his license, registration, and insurance. (*Id.* at ¶¶ 21–22.) When Mr. Sampedro admitted that he did not have a driver's license, Trooper Kores asked for another form of identification. (*Id.* at ¶ 23.) Mr. Sampedro offered his Mexican consular identification card.[2] (*Id.* at ¶ 24.) Trooper Kores then returned to his vehicle where he appeared to be speaking to someone on his radio. (*Id.* at ¶ 26.)

After approximately forty minutes, Trooper Kores went to speak to the other driver and permitted him to leave the accident scene. (*Id.* at ¶ 27.) Trooper Kores next approached Mr. Sampedro, placed him under arrest, and seated him in the back of his cruiser. (*Id.* at ¶ 28.) Approximately thirty minutes later, a tow truck and two unmarked vans arrived at the scene. (*Id.* at ¶ 32.) Two officers from ICE identified themselves, approached the cruiser, and took custody of Mr. Sampedro. (*Id.* at ¶ 33.) Thereafter, removal proceedings were initiated against Mr. Sampedro. (*Id.* at ¶ 43.)

---

[2] "A Matricula Consular Identification Card is an ID card issued to Mexican nationals living in the United States." *Maria S. for E.H.F. v. Doe*, 267 F. Supp. 3d 923, 947 (S.D. Tex. 2017).

Construing the allegations in a light most favorable to Mr. Sampedro, the Court infers that Trooper Kores investigated Mr. Sampedro's identification and in doing so learned that he was not lawfully residing in the United States. The Court further infers that Trooper Kores directly or indirectly contacted United States Immigration and Customs Enforcement ("ICE") and then waited for ICE officials to arrive on scene to take custody of Mr. Sampedro.

On January 15, 2018, Mr. Sampedro filed a four-count civil rights action. In the first three counts, he alleges that Trooper Kores violated his Fourth Amendment right against unlawful seizure (Count I), his Fourteenth Amendment equal protections rights (Count II), and his rights against unlawful seizure and excessive force under the Connecticut Constitution (Count III). In Count IV, which is brought against all four defendants, Mr. Sampedro seeks a declaration that Trooper Kores' conduct violated his constitutional rights and permanent injunctive relief precluding DESPP from acting in a similar fashion in the future with respect to all Connecticut citizens without legal status in the United States.

On April 13, 2018, the Defendants filed a motion to dismiss the Complaint in its entirety. Trooper Kores argues that he is entitled to qualified immunity as to each claim against him. Trooper Kores further argues that Mr. Sampedro has failed to allege a plausible violation of the Fourth Amendment or the Connecticut Constitution because probable cause existed to arrest Mr. Sampedro. All of the Defendants have moved to dismiss Count IV pursuant to the Eleventh Amendment to the United States Constitution for lack of subject matter jurisdiction. They further move to dismiss Mr. Sampedro's request for injunctive relief for lack of standing.

**Standard of Review**

As a threshold matter, the Defendants moved to dismiss the complaint pursuant to only Rule 12(b)(6), but their motion also challenges this Court's subject matter jurisdiction with respect

3

to Count IV. Subject matter jurisdiction is properly challenged pursuant to Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1); *see Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). Because the Defendants raise only a facial challenge to subject matter jurisdiction, and Mr. Sampedro has had a full and fair opportunity to respond to that challenge, it is appropriate to convert the Defendants' motion, to the extent it challenges subject matter jurisdiction, to a motion under Rule 12(b)(1).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the Defendants, is similar to that required under Rule 12(b)(6). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822

4

F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova,* 201 F.3d at 113.

**Discussion**

    **Count I—§ 1983 Claim Under the Fourth Amendment**

The Court first considers whether Mr. Sampedro has a viable claim for unlawful seizure under the Fourth Amendment. Trooper Kores raises two defenses to this claim. Trooper Kores first argues that Mr. Sampedro cannot, as a matter of law, establish a violation of the Fourth Amendment because there was probable cause to arrest Mr. Sampedro for multiple traffic violations, including driving without a license. Trooper Kores alternatively argues that Mr. Sampedro cannot establish that he violated a clearly established right and, therefore, he is entitled to qualified immunity in any event.

It is well established that the existence of probable cause is a complete defense to a claim of unlawful seizure under § 1983. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("we have equated a lawful arrest with an arrest based on probable cause"); *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) ("[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause.").

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be

5

arrested. Probable cause is to be assessed on an objective basis. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 368–69 (2d Cir. 2007) (citations omitted; internal quotation marks omitted).

It is undisputed that Trooper Kores had probable cause to arrest Mr. Sampedro for driving without a license. When Trooper Kores arrived at the accident scene, he asked Mr. Sampedro for his driver's license. (Compl. at ¶ 21.) Mr. Sampedro admitted that he did not have one. (*Id.* at 22.) Driving without a license is a motor vehicle infraction under Connecticut law. Conn. Gen. Stat. § 14-36(a). Although this offense is a minor motor vehicle violation, our courts have held that arrests based on minor traffic violations are permissible under the Fourth Amendment — indeed, such arrests are constitutional even when they are violative of state law. *Moore*, 553 U.S. at 176 (holding arrest for motor vehicle violation was constitutional even though such arrest was not permitted under state law); *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (holding arrest was constitutional where officers had probable cause to believe defendant committed "minor" traffic infraction of failure to signal when changing lanes).

Notwithstanding the foregoing, Mr. Sampedro contends that his detention in Trooper Kores' cruiser while awaiting the arrival of ICE violated the Fourth Amendment in so far as that detention was not supported by additional cause. In support of this argument, he cites a series of cases which stand for the proposition that a traffic stop "exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). These cases are inapposite however. Mr. Sampedro's seizure was not a traffic stop or *Terry* stop, but rather it was an arrest founded upon probable cause. Mr. Sampedro cites to no authority, and this Court is not aware of

any, holding that the Fourth Amendment prohibits an arrestee from being detained at the scene of arrest for thirty minutes.

Mr. Sampedro urges this Court to consider Trooper Kores subjective motives in detaining him, *i.e.*, cooperating with ICE, when deciding whether his conduct was unconstitutional. But an officer's subjective intentions are irrelevant to the Fourth Amendment analysis. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *see, e.g.*, *Berg v. Kelly*, 897 F.3d 99, 110 (2d Cir. 2018) (holding that district court's conclusion that issues of fact concerning "*why* the protesters were detained" precluded it from granting summary judgment on Fourth Amendment claim based on qualified immunity defense "runs afoul of existing precedent," which requires an objective analysis).

For these reasons, the Court is not persuaded that the Complaint alleges a plausible Fourth Amendment violation. Even if the Court were to assume *arguendo* that the Complaint stated a plausible Fourth Amendment violation, however, Trooper Kores would still be entitled to qualified immunity because Trooper Kores did not violate any clearly established right under the circumstances presented here.

"Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). The defense of qualified immunity may properly be raised at the pre-discovery, motion-to-dismiss stage, because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Indeed, "[t]he driving force behind creation of the qualified immunity doctrine [is] a desire to ensure that insubstantial claims against

government officials [will] be resolved prior to discovery." *Looney*, 702 F.3d at 706 (quoting *Pearson*, 555 U.S. at 231).

When determining whether a government official is entitled to qualified immunity, the court must assess: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the [officials] to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). Courts have discretion to decide the order in which they consider whether the officers violated a federal right, and whether the right was clearly established. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal quotation marks omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an officer acting under similar circumstances' was held to have acted unconstitutionally." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). The qualified immunity standard after all is "forgiving" and "protects all but the plainly incompetent or those who knowingly violate the law." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (citations omitted).

As previously indicated, Mr. Sampedro's claim is that detaining a lawfully arrested individual at the scene of the arrest until ICE agents arrive to take that arrestee into ICE custody violates the Fourth Amendment. Mr. Sampedro does not cite any apposite authority in support of

this proposition. It necessarily follows, therefore, that Trooper Kores could not have violated a "clearly established" constitutional right. *See Allah v. Milling,* 876 F.3d 48, 58–59 (2d. Cir. 2017) (holding that plaintiff's constitutional rights were violated but nonetheless concluding defendants was entitled to qualified immunity because neither the Second Circuit nor the Supreme Court had assessed the constitutionality of the practice in question at the time the disputed conduct occurred). The motion to dismiss Count I is granted on this alternative basis as well.

**Count II—§ 1983 Violation Based on Fourteenth Amendment Rights**

The Court next considers whether Trooper Kores is entitled to qualified immunity for Mr. Sampedro's equal protection claim. Mr. Sampedro argues that Trooper Kores violated his Fourteenth Amendment right to equal protection by detaining him in his cruiser and cooperating with ICE due to racial or ethnic biases.[3] Trooper Kores responds that he is entitled to qualified immunity because it was objectively reasonable for him to believe that he could arrest Mr. Sampedro, question Mr. Sampedro's identity and immigration status, and detain Mr. Sampedro until ICE agents arrived at the scene. The Court agrees that Trooper Kores is entitled to qualified immunity as to Count II.

Determining someone's identity and confirming whether other authorities want that person is a routine, and well recognized, aspect of a traffic stop. *Rodriguez*, 135 S. Ct. at 1615 (recognizing that ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"); *see Muehler v. Mena*, 544 U.S. 93, 101 (2005)

---

[3] Mr. Sampedro also argues in passing in his opposition memorandum that if this detention was part of a larger department policy "to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Cause has occurred." In his Complaint, however, Mr. Sampedro does not allege that Trooper Kores violated his equal protection rights by following a departmental policy that encouraged or required officers to conduct immigration investigations based on race. Accordingly, this argument is irrelevant to the issue presently before the Court — whether Trooper Kores is entitled to qualified immunity for the claim asserted in the Complaint.

("the officers did not need reasonable suspicion to ask [the plaintiff] for her name, date and place of birth, or immigration status"). When Trooper Kores arrived at the accident scene, he was confronted with an individual who, by his own admission, did not have a driver's license and had only a Mexican consular identification card for identification. Therefore, he made further inquiry about Mr. Sampedro's identity, immigration status, or both. The Court cannot say that every reasonable officer, when confronted with this situation, would have known that he should not and could not further investigate Mr. Sampedro's identity, immigration status, or both.

Similarly, the Court is not persuaded that every reasonable officer would have known that it was unlawful to detain Mr. Sampedro until ICE agents arrived on scene. Federal law not only encourages state officials to cooperate with ICE but also expressly prohibits state and local governments from hindering the free exchange of information concerning individuals' immigration status. 8 U.S.C. § 1373 (prohibiting federal, state, and local governments from prohibiting or restricting agencies abilities to sending or exchanging information regarding individuals' immigration status); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) ("[N]o written agreement is required for a state official to cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States. *See* 8 U.S.C. § 1375(g)(10)."); *see also Morales v. Weiss*, No. 3:11-cv-01204 (WWE), 2016 WL 3945074, at *4 (D. Conn. July 19, 2016) (prosecutor's "request for an ICE detainer on an undocumented state criminal defendant did not violate a clearly established statutory or constitutional rights"), *aff'd*, 709 Fed. Appx. 95, 96 (2d Cir. 2018).

Mr. Sampedro responds that dismissal is nonetheless inappropriate because it is clearly established that officers cannot selectively enforce the law based on racial or ethnic considerations and therefore any reasonable officer would have known that he could not discriminate on the basis

of race. Mr. Samedro has failed to identify an applicable clearly established right, however. Mr. Sampedro is correct that racial profiling in certain settings has been held to violate the Fourteenth Amendment's equal protection clause. *E.g.*, *Batson v. Kentucky*, 476 U.S. 79, 84 (1986) (holding use of peremptory challenges to exclude jurors based on race violated equal protection clause). But, for purposes of qualified immunity, the inquiry is not whether such general principles of constitutional law **might** be applied to a particular circumstance, but whether such principles **have** been applied in the same or similar circumstances.[4] *See Allah,* 876 F.3d at 59 (holding defendants were entitled to qualified immunity where relevant precedent did not clearly establish that a substantive due process would result from disputed conduct and plaintiff failed to "identify any other case law that would have placed Defendants on notice that their conduct violated substantive due process"). As noted above, "[r]ights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an officer acting under similar circumstances' was held to have acted unconstitutionally." *Grice*, 873 F.3d at 166 (quoting *White*, 137 S. Ct. at 552). Mr. Sampedro has not identified any controlling authority that establishes that Trooper Kores could not lawfully arrest, investigate, and detain Mr. Sampedro as alleged without violating the Fourteenth Amendment.

---

[4] Mr. Sampedro cites two cases involving traffic stops in support of his argument that Trooper Kores alleged conduct is sufficient to give rise to a plausible equal protection claim. Neither of the defendants in these cases, however, asserted a qualified immunity defense and the factual circumstances presented in those cases are readily distinguishable from those presented here. *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1169–70 & n.12 (10th Cir. 2003) (noting that city defendants had not raised a qualified immunity defense and concluding there were issues of fact concerning whether the officer stopped the plaintiff for pretextual reasons where, *inter alia*, the plaintiff testified that he did not commit any traffic violations, the officer made eye contact with him shortly before turning on his emergency lights, and the officer confronted him with stereotypical accusations immediately upon stopping him); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1140 (N.D. Cal. 2000) (denying without mention of qualified immunity defense motion to dismiss suit against highway patrol for failure to state a claim where plaintiffs adequately pleaded claim of systematic racial discrimination by highway patrol during traffic stops). Accordingly, these cases do not support an argument that a particularized right exists or that the allegations in the Complaint are sufficient to overcome a qualified immunity defense.

Mr. Sampedro does rely on *Arizona v. United States*, 567 U.S. 387 (2012) to support his argument that federal law bars state officers from questioning an individual's immigration status or detaining individuals for ICE officials. His reliance on that case is misplaced. First, *Arizona v. United States* addressed whether portions of an Arizona immigration statute were preempted by federal immigration law, not whether a law enforcement officers conduct violated the equal protection clause. *Id.* at 393. Second, the portion of that decision relied upon by Mr. Sampedro is *dicta*; *id.* at 413; and, therefore, cannot constitute clearly established law; *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) ("[c]learly established Federal law includes only holdings of Supreme Court decisions and does not include dicta" [internal quotation marks omitted]). Finally, the legal implications of the Arizona statute were different than those presented by Trooper Kores' conduct in this case.[5]

---

[5] In *Arizona v. United States*, the Supreme Court considered whether four provisions of an immigration enforcement scheme enacted by Arizona was preempted by federal law. *Id.* at 393. One of the statutory provisions at issue "require[d] state officers to make a 'reasonable attempt . . . to determine the immigration status' of any person they stop, detain, or arrest on some other legitimate basis if 'reasonable suspicion exists that the person is an alien and is unlawfully present in the United States.'" *Id.* at 411 (quoting Ariz. Rev. Stat. Ann. § 11–1051(B)). This provision was challenged, in part, because it would require state officers "to delay the release of some detainees for no reason other than to verify their immigration status." *Id.* at 413. As part of its analysis, the Supreme Court expressed two concerns. First, it observed, citing Fourth Amendment precedent, that "[d]etaining individuals *solely* to verify their immigration status would raise constitutional concerns." *Id*. (emphasis added). Second, it expressed concern that this statute would "disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence *without federal direction and supervision*." *Id.* (emphasis added). Notwithstanding these concerns, the Supreme Court acknowledged that the disputed provision could be interpreted by Arizona courts in a manner that did not implicate Fourth Amendment or preemption principles. *Id.* at 413–15. Accordingly, it concluded that further development of state law was necessary before deciding the preemption and constitutional challenges raised with respect to this provision. *Id.* at 415.

The concerns identified by the Supreme Court in *Arizona v. United States* are not present here. As previously discussed, Trooper Kores conduct did not violate the Fourth Amendment because he had probable cause to arrest Mr. Sampedro. Although Mr. Sampedro contends that he was arrested solely to assist ICE, "in the equal protection context, 'courts have consistently expressed an unwillingness to intrude upon a police officer's discretion to decide when to effectuate an arrest.'" *Minto v. Conn. State Police*, No. 3:14-cv-00747 (VLB), 2015 WL 5822596, at *11 (D. Conn. Sept. 30, 2015) (alteration omitted) (quoting *Fedor v. Kudrak*, 421 F. Supp. 2d 473, 481 (D. Conn. 2008)). Second, Trooper Kores investigation into Mr. Sampedro's immigration status is not alleged to have been done unilaterally; it was done in coordination with federal immigration authorities. Therefore, the Supreme Court's concerns about state officials acting unilaterally in the realm of immigration, over which the federal government has plenary authority, is not present. *See Kleindienst v. Mandel*, 408 U.S. 753, 766–67, 769–70 (1972) (discussing the "plenary power" of Congress over immigration matters).

In sum, Mr. Sampedro has not identified any precedent in which the Second Circuit or the Supreme Court have held that a police officer may not question an arrestee's immigration status or cooperate with ICE in circumstances similar to those presented here without running afoul of the Fourteenth Amendment's equal protection clause. Accordingly, the Court is not persuaded that any reasonable officer would have understood that Trooper Kores' conduct was unlawful under these circumstances. Instead, under the current state of the law, it was objectively reasonable for Trooper Kores to believe that confirming Mr. Sampedro's identity and immigration status would not violate his constitutional rights. It was also objectively reasonable for Trooper Kores to believe that he could cooperate with ICE by detaining Mr. Sampedro until ICE agents arrived on scene without violating Mr. Sampedro's constitutional rights.

For these reasons, Trooper Kores is entitled to qualified immunity as a matter of law. Count II is dismissed.

**Count III—Violation of the Connecticut Constitution**

Trooper Kores further argues that he is entitled to qualified immunity concerning Mr. Sampedro's unlawful seizure and excessive force claims under the Connecticut Constitution. The federal qualified immunity defense, however, is limited to claimed violations of federal law. *Downing v. W. Haven Bd. of Ed.*, 162 F. Supp. 2d 19, 30 n.6 (D. Conn. 2001) (holding that federal qualified immunity defense did not apply to claims arising under the Connecticut Constitution because that defense "is limited to claimed violations of federal law, whether based on the federal constitution, federal statute, or federal treaties"); *see Mulligan v. Rioux,* 229 Conn. 716, 727–731 (1994) (discussing difference between federal qualified immunity doctrine and state common law immunity doctrines). Accordingly, Trooper Kores is not entitled to qualified immunity for Mr. Sampedro's claim under the Connecticut Constitution.

Alternatively, Trooper Kores argues that Mr. Sampedro has failed to state a claim for unlawful seizure and excessive force. The Court agrees.[6] The existence of probable cause is also a complete defense to a claim for unlawful arrest under Connecticut law; *Tyus v. Newton*, No. 3:13-cv-01486 (SRU), 2015 WL 5306550, at *7 (D. Conn. Sept. 10, 2015) (collecting cases); and the probable cause standard is the same under both Connecticut and federal law; *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007). As previously explained, Trooper Kores had probable cause to arrest Mr. Sampedro and therefore Mr. Sampedro has failed to state a plausible unlawful seizure claim. To the extent Mr. Sampedro relies upon the detention in the cruiser, as opposed to the original seizure by arrest, his state constitutional claim fails for the reasons set forth above regarding the Fourth Amendment claim. Finally, Mr. Sampedro does not allege anywhere in the Complaint that Trooper Kores used any force when arresting him. Accordingly, Mr. Sampedro has failed to state a plausible excessive force claim as well.

**Count IV—Declaratory and Injunctive Relief**

The Court next considers whether Mr. Sampedro has a viable claim for declaratory and injunctive relief. It is well settled that the Eleventh Amendment to the United States Constitution generally bars suits brought by citizens against a state or a state official in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *City of Shelton v. Hughes*, 578 Fed. Appx. 53, 54–55 (2d Cir. 2014) (summary order). In *Ex parte Young,* 209 U.S. 123 (1908), the Supreme Court created a limited exception whereby a plaintiff can sue state officials acting in their official capacity for prospective declaratory or injunctive relief from ongoing violations of federal law

---

[6] Mr. Sampedro has not set forth an independent analysis of his claims under the Connecticut Constitution in his memorandum in opposition to the motion to dismiss, nor has he argued that the Connecticut Constitution affords greater protections than the equivalent parts of the United States Constitution in this circumstance. Consistent with the Connecticut appellate court's policy regarding unaddressed claims under the Connecticut Constitution, the Court concludes that Mr. Sampedro's state constitutional rights are co-extensive with his federal constitutional rights in this circumstance. *Perez v. Comm'r of Correction*, 326 Conn. 357, 383 (2017); *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn. 2005).

notwithstanding the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Hughes*, 578 Fed. Appx. at 55. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Hughes*, 578 Fed. Appx. at 55.

As a threshold matter, the Defendants challenge Mr. Sampedro's standing to seek an injunction under *Ex parte Young*. To have standing to seek an injunction, Mr. Sampedro "must assert a likelihood that [he] will be subjected to a similar [constitutional] violation in the future." *KM Enterprises, Inc. v. McDonald*, No. 11-cv-05098 (ADS) (ETB), 2012 WL 4472010, at *11 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 Fed. Appx. 12 (2d Cir. 2013). The factual allegations in the Complaint, however, focus entirely on the events on June 9, 2017. Even if these allegations were found to be sufficient to establish a plausible constitutional violation on June 9, 2017, they do not establish a real and immediate risk that Mr. Sampedro's constitutional rights will be violated again in the future.[7] *See id.* ("the fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages . . . , does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future"); *White v. Livingston*, No. 08-cv-02413 (LHR), 2009 WL 2900771, at *6 (S.D. Tex. Sept. 3, 2009) ("When a plaintiff 'allege[s] only a single, past statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future,' he does not have standing to seek the prospective relief allowed under *Ex parte Young*."

---

[7] At oral argument, Mr. Sampedro postulated that he is at risk of being detaining in the future based on his immigration status, but he failed to allege any factual allegations in the Complaint that would make this concern anything other than conjectural and hypothetical. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (nothing that to have standing a plaintiff's proffered injury must be "actual or imminent, not conjectural or hypothetical").

15

[quoting *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir.1998)]). Accordingly, Mr. Sampedro lacks standing to seek injunctive relief.[8]

The Court also agrees that the Eleventh Amendment bars Mr. Sampedro's request for declaratory relief. In the Complaint, Mr. Sampedro, in essence, seeks declarations that Trooper Kores violated state and federal law when he detained him on June 9, 2017. This request is problematic for two reasons. First, *Ex parte Young* applies only to violations of federal law and, therefore, Mr. Sampedro's request for a declaration regarding state law is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Second, *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). For these reasons, Mr. Sampedro's request for declaratory relief does not fall within the purview of the *Ex parte Young* doctrine.

**Conclusion**

For the foregoing reasons, the Defendants' Motion to Dismiss [ECF No. 12] is GRANTED. The Clerk is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of March 2019.

                                                    */s/ Kari A. Dooley*
                                                  KARI A. DOOLEY
                                                  UNITED STATES DISTRICT JUDGE

---

[8] In the Complaint, Mr. Sampedro effectively seeks relief on behalf of an entire class of persons, but he has not brought a putative class action. At oral argument, Mr. Sampedro clarified that he was seeking injunctive relief only on his own behalf. If Mr. Sampedro were to seek an injunction on behalf of third parties or a class of persons, that, of course, would implicate other standing concerns. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential principle [of standing] is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties.").